UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

'08 FEB -1 P2 :32

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ACHILLE F. INFUSINO,
also known as "Kelly Infusino,"

    Defendant.

Case No. 08-CR-

**08 CR 44**

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Steven M. Biskupic, United States Attorney for the Eastern District of Wisconsin, and Matthew L. Jacobs, Assistant United States Attorney; and the defendant, Achille F. Infusino, individually and by attorney Dennis Coffey, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant will be charged in a one-count information, which alleges violations of Title 18, United States Code, sections 371, and Title 2, United States Code, sections 441a, 441b, and 437g(d).

3.    The defendant has read and fully understands the charge contained in the information and fully understands the nature and elements of the crime with which he has been charged. The charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.     The defendant voluntarily agrees to plead guilty to the information, which is attached hereto and incorporated herein.

5.     The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in the information. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to these facts and that these facts establish his guilt beyond a reasonable doubt:

*Dennis Troha and John Erickson were involved in laundering hundreds of thousands of dollars in campaign contributions to candidates favoring Indian gaming in Kenosha and lax restrictions on interstate trucking, both areas in which Troha owned businesses and/or invested money. Using corporate funds and direct payments from Troha, Erickson maintained a cash fund that reimbursed various individuals for contributions to federal, state, and local candidates. Kelly Infusino was a Troha business associate, at times working directly for Troha's companies (including ATC, Inc.) and at times working under a contract using Infusino's business called Project Management Consultants (PMC).*

*Erickson obtained corporate funds for the cash fund through a variety of means, including: (1) kickbacks from Troha family members who received increases in pay; (2) falsifying corporate expenses; and (3) diverting corporate funds. The largest diversion of corporate funds was a September 25, 2003 check for $86,954.06 from Sabre, Inc. (travel company) and made payable to Johnson Houston Corporation (one of Troha's companies). The money was a rebate of commissions earned by Johnson Houston on its contract with Sabre. Erickson endorsed the check to Project*

2

*Management Consultants. The check was deposited into a PMC account. The PMC account was under the control of Infusino.*

*Thereafter, over the next 12 months, Erickson obtained checks from PMC at intervals and in amounts requested by Erickson – usually in checks to Erickson personally and in round amounts between $3,000 and $5,000. Erickson then cashed the checks and used the money to reimburse campaign contributions. For example, on May 28, 2004, Erickson obtained from PMC payable to Erickson personally, in a total amount of $14,000. Erickson then used the money to reimburse others for campaign contributions to Representative Paul Ryan.*

*As a further part of the conspiracy, Infusino agreed to make campaign contributions in exchange for financial benefits from ATC. ATC paid approximately $7,500 of the lease cost for Infusino's automobile. During that time period and thereafter, Infusino made the following campaign contributions:*

| | |
|---|---|
| *-(Wisconsin) Assembly Democratic Campaign Committee* | *$5,000* |
| *-Senator Russ Feingold* | *250* |
| *-U.S. Representative Paul Ryan* | *500* |
| *-U.S. Representative James Oberstar* | *500* |

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in these offenses.

## PENALTIES

6. The parties understand and agree that the offense in the information to which the defendant will enter a plea of guilty carries the following maximum penalty: one (1) year imprisonment; $100,000 fine; a mandatory special assessment of $25.00; and a maximum of one (1) year of supervised release.

3

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## ELEMENTS

8. The parties understand and agree that in order to sustain the charges set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that a conspiracy involving two or more persons existed for the purpose of violating campaign contribution limits and other restrictions under federal election laws for personal contributions;
>
> Second, that the defendant knowingly and willfully became a member of the conspiracy by taking action designed to further the object of the conspiracy; and
>
> Third, that an act was taken in furtherance of the conspiracy.

## SENTENCING PROVISIONS

9. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

10. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties

4

may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty pleas solely as a result of the sentencing court's determination of defendant's criminal history.

## Guideline Calculations

12. The parties acknowledge, understand, and agree that, pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which defendant is pleading guilty.

13. The parties agree that, under section 2C1.8 of the guidelines, the defendant faces a base offense level of 8.

14. The parties further agree that under section 2C1.8(b)(1) (incorporating section 2B1.1), an enhancement of 4 levels is required based upon the amount of illegal federal contributions reasonably foreseeable by the defendant.

15. The parties agree that no other guideline enhancement provision appears applicable.

16. The parties further agree that, under section 3E1.1, the defendant is entitled to a two-level reduction for acceptance of responsibility. Under this agreement, the defendant is free to request at sentencing any other sentencing guideline reductions.

## Sentencing Recommendations

17. Both parties reserve the right to apprise the district court and the probation office of any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

5

18. Both parties reserve the right to make any recommendation regarding the fine to be imposed; and any other matters not specifically addressed by this agreement.

19. The United States Attorney agrees to recommend a sentence at the low end of the applicable guideline range.

## Court's Determinations at Sentencing

20. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

21. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty pleas solely as a result of the sentence imposed by the court.

## Special Assessment

22. The defendant agrees to pay the special assessment in the amount of $25 prior to or at the time of sentencing.

## DEFENDANT'S COOPERATION AND FURTHER AGREEMENTS

23. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings if asked to do so

by the prosecution. The government agrees that this testimony will be under a grant of immunity to be memorialized in a separate document. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from any applicable statutory mandatory minimum and the applicable sentencing guideline range. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## DEFENDANT'S WAIVER OF RIGHTS

24. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders certain rights which include the following:

> a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.
>
> b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.
>
> c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

7

      d.      At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

      e.      At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

25.    The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

26.    Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, and (3) ineffective assistance of counsel.

8

## GENERAL MATTERS

27. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

28. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

29. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

30. The defendant understands that pursuant to the Victim and Witness Protection Act and the regulations promulgated under the Act by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

31. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach

9

of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

## VOLUNTARINESS OF DEFENDANT'S PLEA

32. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 1/29/08

_____
ACHILLE F. INFUSINO
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 1/30/08

_____
DENNIS COFFEY
Attorney for Defendant

For the United States of America:

Date: Feb. 1, 2008

_____
STEVEN M. BISKUPIC
United States Attorney

Date: Feb. 1, 2008

_____
MATTHEW L. JACOBS
Assistant United States Attorney

11

Case 2:08-cr-00044-PJG   Filed 02/01/08   Page 11 of 16   Document 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 08-CR-

ACHILLE F. INFUSINO,
also known as "Kelly Infusino,"

    Defendant.

## INFORMATION

**The United States Attorney Charges:**

1. Between on or about October 1, 2003, and on or about August 23, 2006, in the State and Eastern District of Wisconsin, and elsewhere,

**ACHILLE F. INFUSINO,
also known as "Kelly Infusino"**

did knowingly conspire with persons known and unknown to knowingly and willfully make illegal campaign contributions, including excessive campaign contributions; contributions using corporate funds; and contributions in the name of another. The illegal contributions to federal candidates involving corporate and excessive contributions aggregated $2,000 or more in a calendar year, in violation of Title 2, United States Code, Sections 441a, 441b, and 437g(d)(1)(A)(ii).

2. At all times relevant to this information, the Federal Election Commission (FEC) was an agency of the United States government responsible for enforcing the limitations, prohibitions, and disclosure requirements of the Federal Election Campaign Act (FECA) set forth in Title 2, United States Code, Sections 431 through 435. Similar restrictions on campaign contributions existed under the laws of the State of Wisconsin.

3. Also at all times relevant to this information, Achille F. Infusino was affiliated with JHT Holdings, Inc. and affiliated companies, including ATC Leasing. At one point, Infusino served as vice president of ATC Leasing. At other points, Infusino contracted with ATC Leasing using his company called Project Management Consultants (hereafter "PMC").

## Description of the Conspiracy

4. The object of the conspiracy was to evade campaign contribution prohibitions under both federal and state law; to make illegal contributions to federal and state elected officials aligned with the business interests of the conspirators; to illegally reimburse the contributions of co-conspirators and their family members; and to conceal such illegal activity from the FEC, the State of Wisconsin, and the public.

5. During the conspiracy, the amount of illegal campaign contributions exceeded $250,000.

2

6. As part of the conspiracy, members of the conspiracy, including Dennis M. Troha and John W. Erickson, identified public officials who supported Indian gaming and/or the relaxing of restrictions on interstate trucking. Members of the conspiracy then sought to provide campaign contributions to these officials in excess of individual limits and in violation of other restrictions and prohibitions under federal and state law.

7. As one part of the conspiracy, conspirators provided purported loans to family members as a means of providing funds for contributions. Repayment of the purported loans, however, was not required until 2007, when agents of the Federal Bureau of Investigation questioned members of the conspiracy about their contributions.

8. As another part of the conspiracy, conspirators provided family members and others with direct cash reimbursements for campaign contributions.

9. As a further part of the conspiracy, conspirators utilized a large sum of cash, a significant portion of which was derived from corporate funds, to reimburse themselves and others for campaign contributions.

10. The conspirators directed contributions to the campaigns of more than 20 candidates, including but not limited to the following:

| | |
|---|---|
| - President of the United States | $18,000 |
| - U.S. Representative (multiple candidates) | more than $100,000 |
| - Wisconsin governor | more than $100,000 |

3

11. The conspirators also made similar illegal contributions to political action committees aligned with both Democratic and Republican political parties.

12. As a result, the conspirators caused the federal recipients of the contributions, and their agents, to file false and erroneous reports with the FEC.

13. As a further part of the conspiracy, Erickson facilitated the reimbursement of campaign contributions to himself and others by cashing checks payable to cash, by falsifying corporate expenses, and by diverting corporate income to a cash fund.

### Actions of Achille F. Infusino

14. One such diversion of corporate funds involved a corporate check, dated September 25, 2003, payable to JHT Holdings, a parent company of ATC Leasing. The check was in the amount of $86,954.06. Erickson endorsed the check to Project Management Consultants, the business controlled by Infusino. Over a period of the next 12 months, Infusino authorized the issuance of checks by Project Management Consultants and/or gave cash to Erickson personally in order to provide Erickson with the proceeds of the $86,954.06. Erickson then used the money to reimburse himself and others for campaign contributions.

15. As a further part of the conspiracy, Infusino agreed to make campaign contributions in exchange for increased financial benefits from ATC. ATC paid approximately $7,500 for an automobile leased by Infusino. During that time period and thereafter, Infusino made the following campaign contributions:

4

| | |
|---|---|
| -(Wisconsin) Assembly Democratic Campaign Committee | $5,000 |
| -Senator Russ Feingold | 250 |
| -U.S. Representative Paul Ryan | 500 |
| -U.S. Representative James Oberstar | 500 |

### Acts in Furtherance

17. On or about May 28, 2004, in the State and Eastern District of Wisconsin, Achille F. Infusino caused the following four checks to be written to John W. Erickson. Erickson then used the funds to reimburse campaign contributions to the campaign of Representative Paul Ryan.

| Check number | Amount |
|---|---|
| 1067 | $3,000 |
| 1068 | $3,000 |
| 1069 | $4,000 |
| 1070 | $4,000 |

All in violation of Title 18, United States Code, Section 371.

February 1, 2008
Date

STEVEN M. BISKUPIC
United States Attorney

5